THE MARINE BANK OF CHICAGO *vs.* WRIGHT and LOSEE.

A bill of lading can be transferred by delivery merely, without any indorsement or written assignment, so as to transfer the property in the goods which it represents, to the holder.

It was agreed between V. and the defendants that the latter should advance money to V. to buy corn at Chicago, to be put in store and shelled and to be the property of the defendants while in store, so far as they had advanced money on it, and to be shipped for their account, and the bills of lading to be sent to them, and their advances to be reimbursed from the proceeds of the corn. V. purchased and shipped several cargoes of corn, and drew on the defendants for the amount. To procure funds to pay for the last cargo shipped, V. drew a bill upon the defendants for $3500 which was discounted by the plaintiff, V. at the same time delivering to the plaintiff a duplicate bill of lading of the corn, attached to the draft as collateral security for the payment of the draft. *Held* that no right of lien, founded on the general arrangement between V. and the defendants, and the payment by the latter of a larger sum by way of advances than the aggregate of V.'s purchases, could prevail against the plaintiff's special or specific rights as the *bona fide* transferee of the bill of lading.

THE plaintiff is a banking corporation at Chicago, Illinois; the defendants are commission merchants in New York. In the fall of 1859 it was agreed, between Henry Viets, of Fishkill, New York, doing business at Chicago by his attorney, William A. Viets, and the defendants, that the defendants should advance money to Viets to buy corn at Chicago, to be put in store and shelled, and to be the property of the defendants while in store, so far as they had advanced money on it, and to be shipped for the defendants' account to the Western Transportation Company, and the bills of lading to be sent to the defendants, and their advances to be reimbursed from the proceeds of the corn. Under this agreement Viets purchased corn and shipped it in six parcels or shipments, and he drew on the defendants nine drafts, which were accepted and paid by them, amounting in all to . . . . . . . . . . . . . $14,683 24

The net proceeds of all the corn was . . . . 12,834 41

Balance due from Viets to the defendants on the
transactions, . . . . . . . . . . . . . $1,843 83

The last of these shipments was made 16th November, 1859, of 7473 bushels of corn by the schooner *B. R. Lummis*, and the plaintiff's claim is for the proceeds of that cargo, upon the following facts : Viets purchased these 7473 bushels of corn, and had it stored. He got the money to pay for it, very largely by drawing on the defendants, and some he borrowed in Chicago, temporarily. Viets was a dealer with the plaintiff, and he called on the cashier of the plaintiff, informed him he wanted to forward a cargo of corn to the defendants, and asked him if he would buy a bill of exchange on them for $3500. The cashier said he would. Viets then shipped the corn by the *Lummis*, and made his draft on the defendants for $3500, which was discounted by the plaintiff. One bill of lading of the corn was left with the plaintiff ; a second was forwarded to the Western Transportation Company. The course of dealing between Viets and the plaintiff had varied. In one year, 1858, the plaintiff had required him to hypothecate the bills of lading that he drew against, and the interest of the plaintiff was expressed on the bills of lading. This was not required of Viets in 1859, and the plaintiff expressly waived the hypothecation of the *Lummis* bill of lading. The defendants received the cargo of the *Lummis* at Buffalo, December 1, 1859, and had it discharged and forwarded to New York. After the purchase of the corn shipped by the *Lummis*, and while it was in store, Viets drew on the defendants, for $1220, at sight, to enable him to forward it, which draft they accepted and paid. The corn reached New York slowly, and, being in bad condition, was hard to sell. The account of sales and the general account of Viets on the six shipments, could not be made up until March 1, 1860. The defendants then first discovered that the corn had been much diminished in bulk by shrinkage, and this, together with its poor condition in other respects, made the returns much less than they had expected, and brought Viets in debt to them on the transactions.

The draft for $3500 was presented at the office of the

defendants in their absence, and was not accepted, and the defendants never knew that the plaintiff held any bill of lading of the *Lummis* cargo, the same having remained in the possession of the plaintiff. The defendants knew that the plaintiff had some claim against the *Lummis* corn, and wrote them three letters, dated respectively December 5, 1859, January 17, 1860, and February 18, 1860, in which they assented, upon the order of Viets, to pay the plaintiff any balance of the net proceeds of the corn, after deducting the $1220 specifically advanced on it.

The referee found that the bill of exchange was made, indorsed and delivered to the plaintiff as stated in the complaint for value ; that the cargo of corn was duly transferred to the plaintiff as collateral security for the payment of the bill, and that the bill of lading was delivered to them as stated in the complaint ; that the cargo came to the hands of the defendants on or about the 17th of February, 1860, and that the defendants had notice, before that time, of the right, ownership and interest of the plaintiff in the corn, and that the plaintiff was entitled to judgment.

From the judgment entered on the report of the referee, the defendants appealed.

*Thos. D. Hall*, for the appellants.

*J. L. Jernegan*, for the respondent.

*By the Court*, SUTHERLAND, J. The bill of lading, on its face, stated that the corn was shipped " for and at the risk of whom it may concern."

The bill of lading could be transferred to the plaintiff by delivery merely, without any indorsement or written assignment, so as to transfer the property in the corn which it represented, to the plaintiff. (*Bank of Rochester* v. *Jones*, 4 *Comst.* 497, 501. *Allen* v. *Williams*, 12 *Pick.* 297.)

The draft was discounted by the plaintiff before the corn

Marine Bank of Chicago *v.* Wright.

came into the possession of the defendants, and before any bill of lading had been sent to them. It would seem to follow, if the finding of the referee on the question of fact whether the bill of lading was or was not transferred to the plaintiff, at the time of the discount, as collateral security for the payment of the draft, was authorized by the evidence, that the judgment should be affirmed.

· The referee found that the cargo of corn was transferred to the plaintiff, and the bill of lading thereof delivered to the plaintiff, as stated in the complaint. The complaint alleged that the bill of lading was, at the time the draft was discounted, transferred to the plaintiff as collateral security for the payment of the draft. If this was so, it is quite clear, I think, that no right or lien founded on the general arrangement or agreement between H. Viets and the defendants, by which the defendants were to advance moneys for corn to be bought, and of which bills of lading were to be sent to them, and the mere payment of the $1220 draft, or other moneys, under such arrangement or agreement, could prevail against the plaintiff's special or specific rights as the *bona fide* transferee of the bill of lading. (*See cases before cited.*)

I think the evidence warranted this finding of fact by the referee. The cashier of the plaintiff swore expressly that the bill of lading was delivered to the plaintiff when the draft was discounted; that the draft was discounted on the security of such transfer, and would not have been discounted without it. That this was the fact, I think, is also the inference not only from the deposition of W. A. Viets, but also from evidence given at the trial, though he attempted to get up a legal quibble about *hypothecation*, in both.

I think the judgment should be affirmed, with costs.

Judgment affirmed.

[NEW YORK GENERAL TERM, April 2, 1866. *Geo. G. Barnard, Ingraham* and *Sutherland*, Justices.]