# CHARLESTON.

### ULLMAN, EINSTEIN & Co. v. BIDDLE BROS.

Submitted January 17, 1903.   Decided April 28, 1903.

1. TITLE.
   In general no one can transfer a better title to a chattel than he himself has, even to a *bona fide* purchaser.  (p. 417).

2. TITLE—*Bona Fide Purchaser.*
   Mere possession without more of a chattel by a bailee for storage will not be ground for inference of authority to sell so that a *bona fide* purchaser can buy from him good title against the owner.  (pp. 417, 418).

Error to Circuit Court, Wood County.

Action by Ullman, Einstein & Co. against Biddle Bros. Judgment for plaintiffs, and defendants bring error.

*Affirmed.*

W. N. MILLER and CALDWELL & WATSON, for plaintiffs in error.

VAN WINKLE & AMBLER, for defendants in error.

BRANNON, JUDGE:

Ullman, Einstein & Co. brought *detinue* in the circuit court of Wood County against Biddle Bros, to recover ten barrels of whiskey, which resulted in a verdict of a jury finding for the plaintiffs eight of the ten barrels, on which verdict the court gave judgment for the plaintiff, and the defendant brought a writ of error.  The side of the case of the plaintiffs is that their agent, Guggenheim, sold to Wilson, a liquor merchant, the whiskey, and shipped it from Cleveland to Wilson at Parkersburg; that when advised of the shipment Wilson declined to accept the whiskey, and wrote the plaintiffs a letter so declining; that on the receipt of the letter said agent went to see Wilson and tried to get him to buy the whiskey, but Wilson declined, and then an arrangement was made between them that Wilson should take the whiskey into his store and keep for the plaintiff on storage, until they could sell it, and the

whiskey was taken to Wilson's store. Wilson says that Guggenheim tried to sell him the whiskey, but he refused to buy, but that notwithstanding such refusal, the whiskey was shipped to him, and that he wrote the plaintiff that he would not take it; that then Guggenheim came to Parkersburg and Wilson agreed to take the whiskey at the invoice and thus purchased it. The whiskey was shipped 23 April, and Guggenheim saw Wilson and made the storage agreement 1 May, and again in June, as Guggenheim claims. On 11 July, Wilson sold his entire stock, including this whiskey, to J. W. Depue, and on same day Depue sold a half interest to Biddle, and a few days later the other half, and shortly after Depue bought back of the Biddles about $2,000.00 worth of the liquors. Not a dollar was ever paid the plaintiffs.

Wilson was at all these dates heavily in debt, beyond solvency—far beyond.

On the trial the court, on motion of the plaintiffs, gave the following instructions: "If the jury believes from the evidence that the plaintiffs were the owners of ten barrels of whiskey described in the declaration and that the plaintiffs sent said whiskey to Parkersburg in or about the spring of 1898 to be delivered to J. L. Wilson, or to some other person in his behalf, and if the jury further believes from the evidence that J. L. Wilson, after being notified that the whiskey had been shipped, refused to buy or accept said whiskey as a purchase, but that the said Wilson did afterwards take the same into his possession as the property of the plaintiffs with the understanding that he would hold the same for the plaintiffs and subject to their order—then so long as Wilson held such whiskey under that arrangement, the whiskey remained the property of the plaintiffs, and Wilson had no title thereto and could not pass title to the whiskey or make lawful sale of the property. And if the jury believes from the evidence that Wilson did take such whiskey into his possession agreeing to hold it for the plaintiffs as their property as above set forth, then before the jury can find that the whiskey subsequently became the porperty of Wilson, the burden of proof is on the defendant to show by fair preponderance of the testimony that Wilson lawfully acquired title to the property after agreeing to hold it for the plaintiffs."

We see no error in that instruction. Plainly, if there was no

sale passing title out of the plaintiffs to the whiskey, and Wilson got it into his hands on storage as a bailee while such storage existed Wilson had not a shadow of title, and could pass none to Depue, and Depue could pass none to Biddle Bros.    The last clause is specified as objectionable because it put the burden of proof on the defendants.    It says that if Wilson had the whiskey on storage, if that status once existed, then the defence must show that the storage arrangement was ended by a sale, because the defendants so asserted and claimed.    They claimed under title conferred by sale, and must prove it.    1 Greenl. section 74.    It is said that this instruction ignored the law respecting the rights of Depue as an innocent purchaser without notice as affected by the character of the possession of the goods by Wilson and the *indicia* of title which he held therefor. and propounds an illegal proposition as to the burden of proof resting on Biddles, as innocent purchasers, and takes no notice of the fault of the plaintiffs in allowing Wilson to remain in possession of the invoice and permit Wilson to mingle the liquors with others sold.    Practically, if this broad proposition be held, there can be no bailment that does not lose the property to the bailor and give the bailee power to confer title on a purchaser, though that bailee has not an iota title.    It would violate that basic principle in the law of sales found in Mechen on Sales, section 154: "It is a fundamental doctrine of the common law, from which all discussions of the question must proceed, that, in general, no one can transfer a better title to a chattel than he himself has.    *Nemo dat quod non habit* is usually the inflexible maxim.    That some or all of the parties acted in good faith or parted with value is usually entirely immaterial; however innocent the motives, or however valuable the consideration, if the party who assumed to convey had no right or title to transfer, no title can pass to the other."    The very authority cited to support the contention of Biddles says that "simply intrusting the possession of a chattel to another as depositary, pledge or other bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property in case of an unauthorized disposition of it by the person so intrusted. *Ballard* v. *Burget,* 40 N. Y. 314.    The mere possession of chattels, by whatever means acquired, if there be no other evidence

of property or authority to sell from the true owner, will not enable the possessor to give a good title." Opinion in *McNeill* v. *Bank,* 7 Am. R. 343. So 1 Rob. Pr. 506. "Authority to an agent to sell personal property may be expressly conferred, but may also be implied from circumstances. Such authority cannot be inferred from mere possession of the porperty, even though the alleged agent be a dealer in property of that kind, but the principal must have done something more; he must have so acted as to cloth the agent with apparent authority to sell, or must have conferred upon him, or permitted him 'to assume, all of the apparent *indicia* of title." Mechen, Agency section 335. Thus, the possession by Wilson conferred no appearance of authority to sell. He was simply an agent to keep in storage. What did the plaintiffs do besides allowing this possession to give color of authority to sell? Nothing. The case above cited by counsel for Biddle Bros. was one where the owner of bank stock delivered to brokers to secure a balance the certificate of stock, endorsed with blank assignment, and irrevocable power of transfer signed by him, and the brokers without his knowledge, pledged the stock to one advancing money in good faith and received from the brokers the certificate. He was held entitled to held the shares. This is not in point. The owner had given strong *indicia* of power to dispose of the certificate, and thus inspired confidence in the brokers' authority, held him out as authorized, and it was a case fit for the application of the rule that where one of two innocent people must suffer, he who caused the loss must bear it. *Dias* v. *Chickering,* 64 Md. 348, does not apply. A piano manufacturer sent a piano to a firm of two to sell. One of the firm moved the piano to his home, and there sold it as his own to a *bona fide* purchaser. A majority of the court held that the purchaser had good title because it was entrusted to the firm with undenied power to sell. Another instruction for plaintiff is complained of; but is identically the same as that just discussed, except in phrase. The court gave an instruction for the defence that the question involved in the case was in whom was the legal title to the liquor, and that if the plaintiffs invoiced the goods and shipped them to Wilson, and he declined to accept them, and later the plaintiffs' agent procured Wilson to accept them, and they were accepted and purchased by Wilson, and

Depue purchased of Wilson, then the defendants had good title and the jury should find for the defendants. This fairly presented the defendants' theory, in fact too favorably, because emitting the fraud element, and with the instructions for the plaintiffs placed the two sides of the controversy fairly before the jury.

The defence complains that the following instruction was refused: "The jury are instructed that this is not a suit attacking the sale of the goods sued for by J. L. Wilson to J. W. Depue and by Depue to the defendant Biddle Brothers, and this is not a question before you. The sole question is whether the legal title to the said goods passed from the plaintiffs to the said J. L. Wilson and by Wilson to Depue and from Depue to Biddle Bros., and if you find that the said goods were purchased by Wilson from the plaintiff either when originally invoiced to him or subsequently in May, 1898, when Wilson received and took possession thereof from the railroad company, then you should find for the defendants."

There is no proper matter in this instruction not contained in the instructions given; but it tells the jury that the question whether there were real *bona fide* sales from Wilson to Depue and from Depue to Biddle Bros. was foreign to the case; that is, that though they might believe from the evidence that one or both sales were sham, false and fraudulent, done with design to cheat the plaintiffs out of $750.00 purchase money for the whiskey, yet it had nothing to do with the case. Plainly this is not so. If there was such fraud, could not the jury infer that as the evidence of witnesses to sustain the validity of the sale was false, so was Wilson's evidence that he had purchased the goods? Again, say that Wilson in May agreed to accept the goods. He was steeped in debt over $12,000.00, was insolvent utterly, and concealed this from the plaintiffs, buying the goods when utterly unable to pay for them on credit. He was so deeply indebted that he could not answer its amount. This was a fraud on the vendor. He bought as if able to pay, and on credit. "Where a party, by fraudulently concealing his insolvency and his intent not to pay for goods, induces the owner to sell them on credit, the vendor, if no innocent party has acquired an interest in them, is entitled to disaffirm the contract and recover the goods." *Donaldson* v.

*Farwell*, 93 U. S. 631; *Morrow* v. *New England Co.*, 24 L. R. A. 417 & Note; Benj. on Sales, section 440, note p. 470. "The existence of the intent (not to pay) is a question of fact for the jury, and here, as in other cases of fraudulent intent, a wide range of inquiry is allowed, to put before the jury all the facts and circumstances which may throw light upon it." Mechem on Sales section 905. The same book, section 903, says: "Direct proof of an intent not to pay is usually impossible to make. It may therefore be deduced from facts and circumstances, without any actual representations, full knowledge by the purchaser of his insolvency being always a controlling element." Now under this law could not the plaintiffs show fraud to show Depue not a *bona fide* purchaser?. I shall not discuss the evidence of fraud. It all came from the witnesses of the defendants. These parties were intimates. They had sold to one another liquor establishments again and again. Depue sold once to Biddle; then bought back; then sold to Agery & Co.; then they sold to Wilson; then Wilson to Depue, then Depue to Biddle on the same day Wilson sold to Depue. Wilson's sale to Depue and his to Biddle all within a few days. The whole transaction at once attacked by another creditor and they compromise and Depue helps to pay. These and many other circumstances enter into the question of fraud. To say, as the defence asked the court by this instruction to say, that fraud was foreign to the case, would have been improper.

Lastly, as to the verdict. We cannot set it aside. I think it justified by the evidence; but it is enough to say for the Court that the case before the jury was on questions of fact on a large mass of oral evidence flatly conflicting, given by various witnesses. As to the material point whether Wilson did finally purchase or take the liquor in storage, as on other matters, the case turned on credibility of witnesses and we cannot interfere with the verdict. In such a case the verdict of a jury is sacred and beyond our power as held in *Young* v. *W. Va & Pittsburg Railroad*, 44 W. Va. 218. We therefore affirm the judgment.

*Affirmed.*