# CHARLESTON.

RICHLANDS BRICK CORPORATION v. HURST HARDWARE CO.

Submitted April 24, 1917.   Decided May 8, 1917.

1. SALES—*Bona Fide Purchaser—Requisites to Claim.*

    One who relies for protection upon the doctrine of *bona fide*
    purchaser must show that at the time of his purchase he paid a
    valuable consideration and how he paid it; and that he purchased
    with honest motives, upon the implicit belief in the validity of
    his vendor's claim of title, without notice actual or constructive
    of any outstanding adverse right of another, or immediate access
    to a source of knowledge which if pursued would have enabled
    him to ascertain the actual infirmity or lack of completeness of
    the title be acquired.  (p. 479):

2. CARRIERS—*Bill of Lading—Bona Fide Purchaser.*

    If upon the face of a bill of lading there appears evidence
    sufficient to put an ordinarily prudent man upon inquiry as to the

true ownership of the consignment, a purchaser, without such investigation as would disclose the true owner, from one (other than the consignee) who transfers to him the bill of lading by mere delivery, and who has no title to the property, can not claim protection as a *bona fide* purchaser.   (p. 479).

Error to Circuit Court, Mingo County.

Suit by the Richlands Brick Corporation against the Hurst Hardware Company.   Judgment for plaintiff on a directed verdict, and defendant brings error.

*Affirmed.*

*S. D. Stokes* and *Wade H. Bronson,* for plaintiff in error.

*Goodykoontz & Scherr,* for defendant in error.

LYNCH, PRESIDENT:

The Richlands Brick Corporation, a Virginia concern engaged in the manufacture and sale of brick, sued the Hurst Hardware Company for the value of three carloads of its product, which that company used in the construction of a business building in Williamson.   The plaintiff recovered judgment for the full amount of its claim, upon a verdict directed by the court.

At the same time the Hurst building was in process of construction, C. W. McNulty & Company contracted to erect a building of the same material for A. Goodman in Williamson.   J. H. Norris, a brick layer, agreed with the contractor to furnish the material and complete the brick work on the Goodman building.   He also performed some work on the Hurst building.   Plaintiff quoted a price of $8.35 per thousand on the brick to be used in the two buildings.   The Hurst Hardware Company purchased of plaintiff the brick it needed for its building.   On June 23, 1913, Norris wrote the Richlands Brick Corporation: "Please ship to me 225,000 rough brick for the A. Goodman building.   Let these brick come at once.   Mr. Hurst wants to know if the remaining of his brick are on the road".   To which the next day plaintiff replied: "We have your letter of the 23rd inst., and enter order for 225,000 common brick, 75% hard, at $8.35 per thousand,

delivered f. o. b. Williamson, to be shipped and invoiced to Mr. A. Goodman, and will start shipment within a few days on this order''; and in effect saying a shipment was then on the way to the Hurst Hardware Company and they were for it then loading several other cars. The Hurst company paid for all the brick it purchased direct from the plaintiff, and the superintendent of the McNulty company for those shipped to Goodwin, except the three cars in controversy.

This correspondence, read together with the bills of lading and invoices, create the impression that Goodman, not Norris, was by plaintiff intended as the real purchaser of the brick referred to in the Norris letter, among the less than one half of which, actually furnished, were the three car loads involved in this action. From these papers it appears that the plaintiff treated Goodman as the person to whom it sold the brick. To him it consigned each shipment, sent the invoices and copies of the bills of lading. On the face of each of them they purport to convey the information that the brick were sold to Goodman. It is true there is also on each of them the words, ''customer's No. 6/23—Norris''. But the notation ''6/23'' apparently was intended to serve no purpose other than as a memorandum of the date of Norris' letter, namely, June 23. It seems to have no other signification.

Goodman, it is true, testified that he had no dealings whatever with the plaintiff. But he rejected the brick now in suit, consigned to him July 26 and 29, 1913, because they came too fast for immediate use and he had no place to store them. Norris notified plaintiff of the rejection, and it directed him to deliver the three car loads to the defendant company, which a few days before had notified the plaintiff of the need of additional brick for the Hurst building. But, instead of obeying plaintiff's instructions, Norris sold the three car loads to the defendant, for which its general manager says in general terms it paid him. It did pay the freight, unloaded the cars, and used the brick. It seeks to defeat recovery in this action on the theory that the facts proved constituted it a purchaser for value without notice of plaintiff's claim of ownership.

But to constitute one a *bona fide* purchaser he must at the time he consummates the transaction advance a new and valid consideration representing a fair cash value for the property, upon the implicit belief that the vendor had complete title to the article sold, and without notice actual or constructive of any outstanding adverse right or claim thereto. On him who bases his right to protection upon this doctrine rests the burden of showing to the satisfaction of a reasonable mind that he is such a purchaser. It will not do to say merely, I purchased without notice of any defect in or want of title of the vendor to the property sold and paid him for it. He must show how he paid the agreed price, that the amount paid was a fair cash value for the thing sold, that he did not have actual or constructive notice of any defect in the title he bought, or of any adverse claim to it, and did not have immediate access to a source of knowledge which if pursued would have enabled him to ascertain the actual infirmity or lack of completeness in the title to the property. Without this showing he can not defend his claim as against the true owner. The authorities agree upon the necessity of this proof to establish the *bona fides* of the transaction, if the purchaser would defeat recovery as against the rightful claimant. *Gordon* v. *Rixey*, 76 Va. 694; *Hamilton* v. *Lyons*, 6 Tex. Civ. App. 633; *Meyer* v. *Safety Deposit Co.*, 230 Pa. 106; *Bowman* v. *Griffith*, 35 Neb. 361; *Hayden* v. *Charter Oak Driving Park*, 63 Conn. 142; 8 C. J. 1146. The proof must show that the acts relied upon to sustain the contention that the purchaser acted in good faith and paid a valuable consideration were such as will warrant the conclusion either that his vendor had an unimpeachable title to the subject matter of the transaction or had ample authority from the owner to make the sale, or that such acts as the vendee relies upon as indicative of the ownership of his vendor were such as to preclude the true owner. 1 Mechem on Sales, §§158, 159.

Tested by these principles, sustained by competent authority, are the facts proved sufficient to warrant the conviction that the defendant ought not to bear the burden of repayment to plaintiff in satisfaction of its unpaid claim for the property? In other words, did defendant or its agent have infor-

mation of the invalidity of Norris' claim of title to the brick sufficient to excite an inquiry into the source from which that title was derived, or the means of knowing its probable defects, such as were calculated to awaken a suspicion of the existence of title in the plaintiff?

That upon which the defendant relies to show Norris did have such ownership as justified the conclusion that he was able to confer complete title were the copies of the bills of lading to which we have referred. These duplicates and the invoices, enclosed in a stamped envelope properly addressed, were by the plaintiff delivered to Goodman through the agency of the United States mail. And, as we have seen, they bore evidence that Goodman, not Norris, was the consignee, and the person plaintiff treated as the real purchaser, and to whom it looked for compensation until it directed Norris to deliver the shipments to the defendant. If these documents did not indeed establish between plaintiff and Goodman the relation of vendor and vendee, and render the latter liable for payment of the purchase price of the chattels, they nevertheless were such as to create in the mind of a reasonable man a suspicion that Norris did not actually have the real title to the property. How Norris acquired possession of the bills of lading is not shown. He did so without fault or consent of the plaintiff. Defendant took the copies without endorsement by Goodman or Norris or any other person. Clearly, at the time of the delivery of the property to defendant, neither Norris nor Goodman had any title. Norris never acquired any; and if it can be said the consignment to Goodman, without a prior contract of purchase by him, was in legal effect a proposal by plaintiff to sell the material to him, his rejection of that proposal and plaintiff's acquiescence therein and direction to Norris as to the disposal of the brick negatived the existence of title in Goodman at any time.

There is authority to the effect that a transferree of duplicate bills of lading takes the goods shipped, even against the consignor or owner, who retains the original bills, if the duplicates have been transferred with the intention of passing title. 4 Elliott on Contracts §3163; *Bank* v. *Dearborn*, 115 Mass. 219. The clause qualifying the application of the

doctrine stated is significant.  It in effect excludes the idea of conclusiveness upon the underlying data, and leaves open the door for the admission of proof to show the real character of the transaction.  Goodman and Norris both evidently treated the title as if it had not passed from the plaintiff. The defendant, as its agent Hurst admits, knew that Goodman had declined to accept the brick.  Norris of course knew it.  He wired that fact to the plaintiff.  Furthermore, the duplicate bills of lading bore on the face of each of them evidence sufficient to suggest that Goodman was the consignee, indeed the purchaser of the shipments; facts or *indicia* of facts of such force and effect as to put upon inquiry an ordinarily prudent business man who contemplated a purchase from Norris.

Symbolical delivery of goods, by transfer of bills of lading, has no more efficacy than a manual delivery of the property itself.  4 Elliott on Contracts §3163.  Neither deprives the vendor of the right to rescind or assert his title.  Delivery of the bills of lading, though not endorsed, passes title to the same extent and with like effect, and no more, as an actual delivery of the goods, on the theory that the bills represent the chattels for which they were given.  *Smelting Co.* v. *Lead Works,* 102 Mo. App. 158; *Chandler* v. *Sprague,* 38 Am. Dec. 420; *Marion* v. *Wright,* 46 Barb. 45.  In his notes to *Bank* v. *Railroad Co.,* 105 Am. St. 321, Freeman says: "A bill of lading is strong proof of the intention of the parties with respect to the property described in it, but not conclusive. If the bill shows that the consignment was made for the benefit of the consignor or his order, it is very strong proof of his intention to reserve the *jus disponendi*.  And on the other hand if the bill of lading shows that the shipment is made for the benefit of the consignee, it is almost decisive of the consignor's intention to part with the ownership of the property".  But in this connection we remark again that Goodman rejected the brick in controversy, that Norris informed plaintiff of such rejection, and that plaintiff directed him to deliver the brick to the defendant, thus clearly indicating Norris' recognition of the rights of the plaintiff and showing that he knew he had no authority to deal with the property

as his own or in any manner prejudicial to plaintiff. Obviously, the principles of estoppel can not be invoked to defeat the plaintiff's claim. Delivery of the brick, with or without a transfer by Norris of the bills of lading, at the most was only *prima facie* evidence of title in him. And all the authorities agree that one wholly without title can transfer none to a person claiming to be a bona fide purchaser from him. *Ullman* v. *Biddle,* 53 W. Va. 417; 35 Cyc. 357. Norris did not even have the semblance of ownership. He sold to the defendant under a false pretense; a pretense the falsity of which, we think, defendant, by the exercise of reasonable diligence, could and ought to have discovered.

Judgment affirmed.

*Affirmed.*