COMMERCIAL CREDIT CORPORATION, A CORPORATION

*v.*

THE CITIZENS NATIONAL BANK OF POINT
PLEASANT, WEST VIRGINIA, A CORPORATION

(No. 12224)

Submitted September 24, 1963. Decided December 17, 1963.

*Carroll W. Casto, A. Maurice Foose,* for appellant.

*Hyer & Littlepage, Samuel D. Littlepage,* for appellee.

CAPLAN, JUDGE:

This is a declaratory judgment proceeding instituted in the Circuit Court of Mason County by Commercial Credit Corporation against The Citizens National Bank of Point Pleasant to obtain a judicial declaration of the rights of the parties to the proceeds from the sale of a certain automobile. The case was tried before the court in lieu of a jury on the complaint and amended complaint of the plaintiff, the answer of the defendant, the stipulation and amended stipulation of the parties, and upon the exhibits filed by plaintiff and defendant. From a judgment in favor of the defendant this Court, on March 25, 1963, granted an appeal and supersedeas.

In order to discuss the issues presented, it is necessary to state in some detail the facts which give rise to the

controversy. On January 3, 1962, the Commercial Credit Corporation, referred to herein as Commercial, purchased from the Ford Motor Company a 1962 Ford Galaxie, serial 2G52X139214, for the sum of $2,386.82. This automobile was delivered to Somerville Motors, Inc., a corporation, hereinafter called Somerville, then owning and operating a Ford dealership in Point Pleasant. This delivery was made in accordance with a plan of trust receipt financing in which Commercial was engaged on behalf of Somerville.

Pursuant to the provisions of Code, 1931, Chapter 38, Article 15, as amended, Uniform Trust Receipts Act, Commercial, on June 6, 1961, filed with the Secretary of State of West Virginia its statement of trust receipt financing, signed by it and Somerville. In addition thereto Somerville, on January 3, 1962, executed a trust receipt on said vehicle to Commercial wherein the latter was described as "Entruster" and Somerville was described as "Trustee". On the same date Somerville executed its negotiable note, payable to the order of Commercial in the sum of $4,448.47. This note and the trust receipt covered two vehicles but this action involves only the vehicle described above.

On January 17, 1962, without having discharged its obligation under the trust receipt to Commercial, Somerville borrowed $2,400.00 from the Citizens National Bank of Point Pleasant, hereinafter called Bank. Somerville gave its promissory note to the Bank in the sum of the loan, and as security for the payment thereof executed a chattel deed of trust conveying the subject vehicle in trust for the benefit of the Bank.

Still not having discharged the aforesaid obligation to Commercial, Somerville on January 24, 1962, made application to the Department of Motor Vehicles for a certificate of title to this vehicle in its own name. In making its application Somerville, through its proper officer, stated under oath that the chattel trust deed in favor of the Bank was the first and only lien on this automobile. It

requested that this lien be shown on the certificate of title. The application further revealed the name of the owner and seller of the Ford automobile to be Somerville Motors, Inc. and that the purchase was made by it for cash on January 3, 1962. The payment of consumers' sales tax was not required, inasmuch as the car was transferred for resale. Accordingly, the Department of Motor Vehicles issued its certificate of title on said car to Somerville showing thereon the lien in favor of the defendant Bank. The certificate was then mailed directly to the Bank as the owner and holder of the lien.

For its own protection Commercial, on January 8, 16 and 25, 1962, checked the subject car on the premises of Somerville, and determined on each occasion that it was still in the possession of the latter.

On January 27, 1962, the plaintiff repossessed the said automobile and later instituted this suit for a declaratory judgment. To prevent depreciation of the value of the car it was agreed by counsel, without waiving plaintiff's claim, that the automobile should be sold and the proceeds therefrom deposited with the clerk of the circuit court pending the outcome of this action. Accordingly, the vehicle was sold by the trustees named in the chattel trust deed. After deducting the costs of the sale, the proceeds therefrom amounted to $1,856.57, which is the sum in controversy.

The basic issue to be resolved in this proceeding is which of the parties is entitled to the $1,856.57, derived from the sale of the automobile involved herein.

The plaintiff, Commercial Credit Corporation, maintains that as the entruster under the trust receipt transaction in which it was engaged with Somerville, it was the actual owner of the vehicle, not a lienor, and that as such is entitled to the proceeds of the sale. Commercial further asserts that the fraudulent act of Somerville in obtaining a certificate of title to the vehicle as the owner thereof can not divest it, Commercial, of its ownership of the Ford automobile.

It is the position of the defendant, The Citizens National Bank of Point Pleasant, that it is entitled to the money in controversy by reason of its lien being noted on the certificate of title as the only claim or lien against the subject automobile. The Bank also contends that Commercial could have protected itself by obtaining a certificate of title with a notation of its lien thereon; that with respect to recording liens, it is fully protected by the provisions of Code, 1931, 17A-4A-3 and 5, as amended; that there is a conflict between Code, 1931, 17A-4A-3 and 5, as amended, and Code, 1931, 38-15-16, as amended; and that the former Code section, being specific, prevails over the latter.

The object of the Uniform Trust Receipts Act, adopted by our Legislature in 1961, is to standardize and protect the trust receipt method of financing the acquisition and resale of goods in their journey from producer to retailer. Its underlying purpose is to afford security to the lender or financing agency, known as the entruster, in trust receipt transactions. Although the act is couched in complex language, stripped of all technical verbiage, a trust receipt has been well defined as a useful and convenient method of financing commercial transactions by means of which title passes directly from the manufacturer or seller to the banker or lender who as owner delivers the goods to the dealer in whose behalf he is acting secondarily, and to whom title goes ultimately when the primary right of the lender has been satisfied. *In Re Chappell,* 77 F. Supp. 573.

Applying this definition to the instant case, Commercial was the lender and as such was the owner of the automobile. Somerville was the dealer and could have acquired title only when its obligation to Commercial was satisfied. Until this obligation was satisfied Somerville held possession of the vehicle as trustee for the plaintiff. It follows therefrom that Commercial did not have a mere lien on the car but was the real and actual owner thereof. It could have been divested of this ownership only by the payment by Somerville of its debt or by a

sale of the vehicle by Somerville to a buyer in the ordinary course of business.

As further evidence of the retention of title by Commercial is the following language in the trust receipt executed by Somerville: "A Security Interest in the following described merchandise * * * is hereby granted to and acquired by Entruster, pursuant to the Uniform Trust Receipts Act as in effect in this State." In Code, 1931, 38-15-1, as amended, a security interest is defined to include title, whether or not expressed to be absolute, whenever such title is in substance taken or retained for security only. Our reference to title herein means actual title or ownership as distinguished from a certificate of title. There is, therefore, no question of priority of liens in the case under consideration. Commercial was the outright owner of the vehicle. The Bank claims a lien by virtue of the chattel deed of trust obtained by it from Somerville.

Let us now look to the circumstances surrounding the transaction under which the Bank claims to hold a lien. It is undisputed that Somerville obtained a certificate of title to this automobile by fraudulently representing that it was the owner thereof. What, then, did Somerville have to convey when it attempted to convey legal title to a trustee for the benefit of the Bank? That it could convey nothing is cogently reflected by a decision of this Court rendered many years ago and still adhered to. We refer to *Ullman, Einstein & Co.* v. *Biddle Bros.*, 53 W. Va. 415, 44 S. E. 280, which held, in Point 1 of the Syllabus: "In general no one can transfer a better title to a chattel than he himself has, even to a *bona fide* purchaser." See also *Frederick* v. *Stump,* 136 W. Va. 350, 67 S. E. 2d 613; *Holt Motors, Inc.* v. *Casto,* 136 W. Va. 284, 67 S. E. 2d 432; *Litz* v. *First Huntington National Bank,* 120 W. Va. 281, 197 S. E. 746; 16 M.J., Sales, Section 54; 46 Am. Jur., Sales, Sections 458, 459.

In the present case Somerville had no title to convey and therefore could not create a valid lien in favor of the Bank. Conversely, the Bank could take no more than

Somerville could legally convey. The purported lien of the Bank must fail in view of the actual ownership of the subject vehicle by Commercial.

The Bank contends that the plaintiff, Commercial, is estopped from asserting its ownership by reason of its failure to obtain a title and to note its lien thereon. This contention is without merit. Commercial was the entruster under a trust receipt transaction. It thereby retained title and remained the owner of the automobile so long as Somerville failed to discharge its obligation under the trust receipt. Obviously, Commercial, being the owner of the legal title to the vehicle and having complied with the provisions of Code, 1931, 38-15-13, as amended, relating to filing its trust receipt arrangement with the secretary of state, was under no obligation to acquire a certificate of title. Commercial performed every duty required of it under the provisions of the Uniform Trust Receipts Act.

On the other hand, the Bank did not exercise the care it could have in these circumstances. It granted a loan to Somerville without any evidence of ownership. The certificate of title was not exhibited to it until at least a week after the loan was granted. It can not now be heard to say that it relied upon such certificate of title and the notation of its lien thereon. Furthermore, the Bank, being familiar with the business of financing the sale and purchase of automobiles, could and should have conducted an investigation to have ascertained whether Somerville was in fact the owner of the automobile in question.

It was held in *C.I.T. Corporation* v. *Commercial Bank of Patterson,* 64 Cal. App. 2d 722, 149 P. 2d 439, that where a bank which loaned money to a retail automobile dealer, secured by a bill of sale covering the automobiles purchased by the dealer under a trust receipt transaction, made no investigation of title and did not rely upon any act or failure to act on the part of the finance company holding title under trust receipts, and such company's statement of trust receipt financing was on file with the

secretary of state, the bank could not defeat the finance company's claim to the automobiles on the ground of equitable estoppel.

The Bank cites and relies on *General Credit, Inc.* v. *Universal Credit Co.,* 99 F. 2d 115, for the proposition that a finance company which allows a dealer, having possession of automobiles under trust receipts, to hold himself out to the world as the owner of goods, will be estopped by his conduct from asserting ownership against a purchaser for value and without notice. Though that case did so hold, it is distinguished from the instant case in that there the trust receipt was not recorded and General Credit, the financing agency for a bona fide purchaser, had no knowledge of it. In the case here under consideration Commercial recorded its trust receipt arrangement with the secretary of state as provided by statute. It could do no more. If the Uniform Trust Receipts Act has any meaning, and we believe that it does, an entruster's ownership is protected when he complies with the provisions of Code, 1931, 38-15, as amended, except for a sale by the trustee to a buyer in the ordinary course of trade. Certainly, even under the definition contained in Code, 1931, 38-15-1, as amended, the Bank in this case could not qualify as a buyer in the ordinary course of trade.

The Bank apparently takes the position that the certificate of title obtained by Somerville is conclusive proof of ownership of the automobile. This is contrary to the established rules of law. A certificate of title is not a warrant of ownership. It does not convey title or determine or affect ownership, but is merely evidence in establishing title, which may be rebutted by other evidence. 60 C.J.S., Motor Vehicles, Section 42,d (2) ; 7 Am. Jur. 2d, Automobiles and Highway Traffic, Section 23. A certificate of title issued on a false representation is void and the holder of such void certificate has no title to pass to a third person. 60 C.J.S., Motor Vehicles, Section 42,c; *Zoloto* v. *Scott,* 111 Ohio App. 372, 160 N. E. 2d 318.

Having held herein that the plaintiff was the owner of the title to the vehicle involved and not a lienor, the pro-

visions of Code, 1931, 17A-4A-3 and 5, as amended, are not material in arriving at a decision in this case. The assertion that there is a conflict between the statutes mentioned immediately above and the statutes dealing with trust receipts is untenable. These acts relate to different subjects, each being designed to accomplish a specific purpose. They can not be read together and are, therefore, not conflicting or inconsistent. Laws relating to different subjects are not in para materia. 17 M.J., Statutes, Section 40; *White* v. *Wirt County Court,* 63 W. Va. 230, 59 S. E. 884.

The judgment of the Circuit Court of Mason County is reversed and the case is remanded for further proceedings in conformity with the principles enunciated herein.

*Reversed and remanded.*