491 S.E.2d 760

STATE of West Virginia ex rel. Charlotte F. CASTLE, Petitioner

v.

Honorable Roger L. PERRY, Judge of the Circuit Court of Logan County; Alice Dempsey and Sheldon Dempsey, Husband and Wife; and Sheldon Dempsey, Individually and as Father and Next Friend of Sheldon Alan Dempsey, an Infant, Respondents.

No. 24038.

Supreme Court of Appeals of West Virginia.

Submitted June 24, 1997.

Decided July 11, 1997.

James D. McQueen, Jr., Joseph K. Reeder, McQueen, Harmon, Potter & Cleek, Charleston, for Petitioner.

George L. Partain, Partain & Forrester, Logan, for Dempseys.

WORKMAN, Chief Justice:

Petitioner Charlotte Castle seeks a writ of prohibition in connection with the ruling of the Respondent, the Honorable Roger L. Perry, awarding summary judgment against her in connection with her sale of an automobile and the resulting injuries caused by the vehicle's buyer. After reviewing this matter, we determine that the lower court was in error in holding Petitioner absolutely liable under West Virginia Code § 17A–4–9 (1996) and accordingly, we find it necessary to grant the requested writ of prohibition.

On December 31, 1993, Petitioner sold a 1981 Ford Escort to Sally Jude for $300 cash. Petitioner endorsed the certificate of title for the vehicle, dated it December 31, 1993, 5:00 p.m., and handed the certificate to Ms. Jude. Petitioner removed her motor vehicle tags and Ms. Jude's brother-in-law placed a temporary plate on the car. On January 1, 1994, Ms. Jude was in an accident while driving the Ford Escort that resulted in injuries to Alice Dempsey and her infant son.

The Dempseys filed a civil action against both Ms. Jude and Petitioner, claiming that Petitioner was still the owner of the vehicle on January 1, 1994, and that she had negligently entrusted the vehicle to Ms. Jude. Petitioner filed a motion for summary judgment on the grounds that she was not the owner of the vehicle at the time of the accident.

At the trial court's instruction, the parties below entered into the following stipulation regarding the pertinent facts:

On December 31, 1993, Sally Jude went to the home of Charlotte F. Castle and paid her Three Hundred Dollars ($300.00) and took possession of a 1981 Ford Escort. Charlotte Castle signed the assignment on the Certificate of Title without putting Ms. Jude's name on the Certificate of Title. Mr. Albert Hoosier, the brother-in-law of Sally Jude, took Ms. Castle's license plate off the vehicle and put a temporary tag belonging to Ms. Jude on the vehicle and Sally Jude drove the vehicle away. The Certificate of Title has been lost.

The trial court granted partial summary judgment in favor of the Dempseys because of Petitioner's failure to fill in Ms. Jude's name on the certificate of title. Judge Perry ruled that "[w]hile a transfer of ownership was effected between Charlotte F. Castle and Sally Jude, the title was not 'properly endorsed to the purchaser' within the contemplation of West Virginia Code § 17A–4–9." The trial court stated further:

In order to successfully transfer a vehicle and avoid potential liability for the negligent operation of the vehicle with regards to a third person, the dictates of West Virginia Code § 17A–4–9 must be strictly followed. That statute entails a two part test which consists of first delivering possession of the vehicle (which was done) *and* delivering the Certificate of Ti-

tle *properly endorsed to the purchaser* (which was not done).

This Court, being of the opinion, that statutes such as West Virginia Code § 17A–4–9 have, as one of their purposes, to assure insurance coverage at all times so as to protect the public. Statutes such as this have a beneficent purpose and will be strictly interpreted.

The Court finds that as to third parties Charlotte F. Castle was on January 1, 1994, still the owner of the vehicle and is liable for any damages that may have resulted from the negligent operation of the subject vehicle by Sally Jude and further Sally Jude would be a person operating a vehicle with the permission of the owner within the terms of a legislatively required omnibus clause in an automobile insurance policy.

■ This matter is brought as a writ of prohibition due to the lack of finality of the proceedings below. While the trial court has ruled on cross-motions for summary judgment as affecting the liability of Petitioner, the underlying civil action has yet to be tried. Our rule with regard to addressing matters such as these was stated in syllabus point one of *State ex rel. United States Fidelity and Guaranty Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995):

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." Syllabus Point

1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979).

Petitioner maintains, and we agree, that because the trial court's ruling with regard to her liability under West Virginia Code § 17A–4–9 is in error, there is a high probability that the result reached at the ensuing trial will be completely reversed.

At the center of this matter is the correctness of the lower court's interpretation of West Virginia Code § 17A–4–9. That statute reads:

The owner of a motor vehicle who has made a bona fide sale or transfer of his title or interest and who has delivered possession of such vehicle and the certificate of title thereto properly endorsed to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another.

Although this statute is written in terms of relieving sellers from liability in connection with the sale of their vehicles, the circuit court's interpretation has the effect of imposing absolute liability on a car's seller for her failure to write the buyer's name on the certificate of title.[1]

■ Petitioner urges this Court to find the lower court in error for several reasons. First, Petitioner refers to the axiom that: " 'A certificate of title [to an automobile] is not conclusive proof of ownership but is merely evidence in establishing title which may be rebutted by other evidence.' Syllabus Point 3, *Commercial Credit Corporation v. Citizens National Bank of Point Pleasant,* 148 W.Va. 198, 133 S.E.2d 720 (1963)." Syl. Pt. 2, *Keyes v. Keyes,* 182 W.Va. 802, 392 S.E.2d 693 (1990). The circuit court itself acknowledged this point of law in its order, stating, "[t]he paper title is not conclusive proof of ownership in the State of West Virginia, but is merely evidence in establishing title." Second, Petitioner points to the rule recited in syllabus point one of *Reed v. Phillips,* 192 W.Va. 392, 452 S.E.2d 708 (1994), that " ' "[v]iolation of a statute is *prima facie* evidence of negligence. In order to

---

1. The parties agree that the lower court's analysis was affected by the fact that Ms. Jude had no insurance and Petitioner had $40,000 coverage, which has since been paid into the circuit court pursuant to Rule 67.

be actionable, such violation must be the proximate cause of the plaintiff's injury." Syllabus Point 1, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990).' Syl. Pt. 3, *Courtney v. Courtney*, 186 W.Va. 597, 413 S.E.2d 418 (1991)."

The statute at issue—West Virginia Code § 17A–4–9—is found within a section of the code dealing with transfers of title or interest.[2] The heading for this particular statute is "Owner after transfer not liable for negligent operation." Given the enactment of this statute in 1951, and lack of amendments in the years following, we cannot accept the trial court's conclusion that the purpose underlying this statute's adoption was the provision of insurance. For comparison purposes, we observe that the statutes which address uninsured and underinsured motorists' coverage as well as the omnibus clause were first enacted in 1967. *See* W. Va.Code § 33–6–31 (1996).

There is no dispute that a bona fide sale occurred and that possession of the vehicle was delivered to the buyer. The only disagreement is the legal effect of the absence of the buyer's name on the certificate of title—a certificate that was otherwise properly completed. The Florida courts refer to such a factual pattern as a transfer of the beneficial ownership of the vehicle. In *Horne v. Vic Potamkin Chevrolet, Inc.*, 533 So.2d 261 (Fla.1988), the Supreme Court of Florida considered whether a dealer who had just sold an automobile to an individual whom it knew to be an incompetent driver could be held liable under that state's version of West Virginia Code § 17A–4–9. *See* Fla. Code Ann. § 319.22 (West 1990). In holding that the dealer could not be held liable, the court reasoned:

It is uncontroverted that the sale of the automobile in question was completed and that respondent automobile dealer was not the owner of the car at the time of the accident. Section 319.22(2) Florida Statutes (1981), provides in pertinent part that the seller of a motor vehicle

who has made a bona fide sale or transfer ... and has delivered possession thereof to a purchaser shall not, by reason of any of the provisions of this law, be deemed the owner or coowner of such vehicle, so as to be subject to civil liability for the operation of the vehicle....

A bona fide sale or transfer is customarily accomplished by delivery of a properly endorsed certificate of title to either the new owner or the Department of Motor Vehicles, ... Case law applying this statute holds that if the terms of the statute are complied with, there is no liability on the part of the seller for injuries suffered because of the negligent operation of the vehicle by the purchaser. Further, *the same rule applies if the beneficial ownership of the vehicle has been transferred even if legal title has not yet been formally transferred in accordance with the statute.*

It is clear from the above that under existing law there is no liability on the part of the seller of a motor vehicle where beneficial ownership or legal title, together with possession, have been transferred to a purchaser and injuries occur because of the negligence of the purchaser in operating the vehicle. *In short, transfer of ownership cuts off liability on the part of the former owner.*

533 So.2d at 262 (citations omitted and emphasis supplied).

In yet another Florida decision, *Palmer v. R.S. Evans, Jacksonville, Inc.*, 81 So.2d 635 (Fla.1955), the court addressed whether an automobile dealer could be held liable where the car's possession had been delivered and an accident occurred a mere twenty minutes later, but the sales contract was not fully executed until the day after the accident. The appellate court considered whether the trial court had erred in refusing to instruct

2. Another statute, W. Va.Code § 17A–4–2 (1996), states the requirements necessary to effectuate a transfer of title to an automobile:

Whenever the owner of a registered vehicle transfers or assigns his title, he shall endorse an assignment and warranty of title upon the certificate of title for such vehicle with a statement of all liens and encumbrances thereon, which statement shall be verified under oath by the owner, and he shall within sixty days from date of sale deliver the certificate of title to the purchaser or transferee, except in the case of a vehicle sold as scrap or to be dismantled.

the jury that if it found that Florida Statute § 319.22, pertaining to endorsement and delivery of the title certificate had not been complied with, it must find that the car was owned by the dealer when the accident occurred. *Id.* at 636. Like Respondent Perry, the plaintiff in *Palmer* relied heavily on the failure to comply with the title transfer requirements:

> Appellant contends ... that one who has not complied with the provisions of this section [Fla. Stat. § 319.22] has not succeeded in divesting himself of ownership of the vehicle, with the result that tort liability growing out of such interest may successfully be asserted against him. . . .
>
> ... *While it is clear that under this section no civil liability can accrue to a seller who has complied with the title certificate requirements, it does not necessarily follow that a seller who does not comply with these requirements is ipso facto liable.* This is true because the common law of sales is available to test the liability of a non-complying seller.

81 So.2d at 636. Examining the facts in *Palmer,* the court observed:

> Both Hughes [buyer] and the Evans salesman considered the deal closed at the time possession of the automobile was delivered, although the Evans bookkeeper did not date the conditional sales contract until August 19th and did not fill out the certificate of title application until August 21st.
>
> ... Before Hughes drove the car out of the Evans lot, the definite intention existed on the part of Hughes and the Evans representative to make immediate transfer of the beneficial ownership of the vehicle to Hughes, and nothing appears to suggest a contrary intention. This intention of the parties, coupled with actual delivery of the goods and the tender and acceptance of the down payment, leaves us with no doubt that the sale had been completed, for the purposes of this case, before the accident occurred.

*Id.* at 636–37.

As support for its decision not to hold the car dealer liable under Florida's version of our statute, the *Palmer* court expounded:

Thus legal title to the automobile remained in the seller, R.S. Evans, at the time the accident occurred. But the rationale of our cases which impose tort liability upon the owner of an automobile operated by another, would not be served by extending the doctrine to one who holds mere naked legal title as security for payment of the purchase price. *In such a titleholder, the authority over the use of the vehicle which reposes in the beneficial owner is absent.* *Id.* at 637 (citations omitted and emphasis supplied).

█ We find the reasoning employed by the Florida courts to be more persuasive than the position maintained by Respondent that absolute liability results from what amounts to nothing more than a clerical error in this case. *See Peterson v. Ford Motor Credit Co.,* 448 N.W.2d 316, 318–20 (Iowa 1989) (noting that language in owner responsibility law stating "but the purchaser or transferee to whom possession was delivered shall be deemed the owner" "is to avoid the imposition of liability upon the prior owner merely for failing to effect a transfer of the title certificate to the new owner"); *Campbell v. LeClaire Wrecking Service,* 380 F.Supp. 555, 557–59 (S.D.Iowa 1974) (noting purpose of exception contained within Iowa's owner responsibility law providing that separate title statute "shall not apply in determining ... whether such sale or transfer was made" was "to avoid the predication of liability on the mere failure to execute the proper paperwork"). While West Virginia Code § 17A–4–9 does not contain language that expressly anticipates the situation at hand, we believe the statute's objective of relieving sellers from liability upon a vehicle's sale that can be demonstrated factually by the exchange of funds, transfer of the possession of the vehicle, and physical transfer of a signed certificate of title was met in this case. The record reveals that the buyer and seller in this case were both unsophisticated in the ways of business and that they each thought that a sale had been effected. To impose liability on the car's seller, who clearly had no control over the actions of Ms. Jude, would defy logic under the facts of this case. Moreover, this was not a negligent entrustment case, as the trial court determined in

granting summary judgment for Petitioner on this theory.[3]

At the center of these statutes that relieve car sellers of liability for the negligence of the car's buyer is the concern that once a bona fide sale has been consummated and possession has been delivered, the seller ought not to be liable for the buyer's actions. A careful reading of West Virginia Code § 17A–4–9 demonstrates that the operative facts for relieving a seller for liability are: (1) a bona fide sale *or* transfer of his title or interest; (2) delivery of the vehicle to the buyer's possession; and (3) delivery of the properly endorsed certificate of title to the buyer. In this case, there was a bona fide sale, delivery of the vehicle's possession, and delivery of a signed certificate of title. The failure to fill in the buyer's name, where there is no accompanying evidence of any improper motivation surrounding that omission, does not present sufficient evidence to suggest that ownership failed to transfer from Petitioner to the buyer. As previously noted, this state has long recognized that a certificate of title is merely evidence used to establish ownership of a vehicle. *See Keyes,* 182 W.Va. at 804, 392 S.E.2d at 695. It is not the only means by which ownership can be demonstrated. What the trial court did, in effect, was to rule that ownership remained in Petitioner solely for her failure to fill in Ms. Jude's name on the certificate of title. The facts of this case do not support such a conclusion. Although the requirements necessary to effectuate a transfer of title pursuant to West Virginia Code § 17A–4–2 may not have been met,[4] this does not create liability under West Virginia Code § 17A–4–9.[5] Accordingly, we hold that the clerical failure of an automobile's seller to write the name of the car's buyer on the certificate of title, which is otherwise properly completed, is not sufficient to invoke liability on the part of the seller pursuant to West Virginia Code § 17A–4–9 where the purchase

money has been exchanged and both a signed certificate of title and possession of the vehicle have been delivered to the buyer. In such instances, beneficial ownership is reposed with the car's buyer and the seller has no control over the buyer's actions. *See Palmer,* 81 So.2d at 637.

Based on the foregoing, we grant the requested writ of prohibition.

Writ granted.

---

**3.** The court similarly granted summary judgment in Petitioner's favor on the theories of family purpose doctrine and agency.

**4.** *See supra* note 2.

**5.** Because West Virginia Code 17A–4–9 is written in the disjunctive with regard to "a bona fide sale

*or* transfer of title," it is arguable that where a bona fide sale has occurred, as in this case, you need not look to the requirements of West Virginia Code § 17A–4–2 when interpreting West Virginia Code § 17A–4–9. W. Va.Code § 17A–4–9 (emphasis supplied).