**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1999**

BRANDON PEGG,

                Plaintiff - Appellee,

        v.

GRANT HERRNBERGER, individually and in his capacity as agent
and employee of the West Virginia State Police,

                Defendant - Appellant.

Appeal from the United States District Court for the Northern
District of West Virginia, at Wheeling.    John Preston Bailey,
District Judge.  (5:14-cv-00116-JPB)

Argued:  October 27, 2016          Decided:  January 4, 2017

Before NIEMEYER, KING, and AGEE, Circuit Judges.

Reversed and remanded with instructions by published opinion.
Judge Agee wrote the opinion, in which Judge Niemeyer and Judge
King joined.

**ARGUED:** Monte Lee Williams, STEPTOE & JOHNSON PLLC, Morgantown,
West Virginia, for Appellant.  Robert G. McCoid, MCCAMIC, SACCO
& MCCOID, P.L.L.C., Wheeling, West Virginia, for Appellee.  **ON
BRIEF:** Deva A. Solomon, Robert L. Bailey, STEPTOE & JOHNSON
PLLC, Morgantown, West Virginia, for Appellant.  Paul J. Harris,
HARRIS LAW OFFICES, Wheeling, West Virginia, for Appellee.

AGEE, Circuit Judge:

Brandon Pegg sued West Virginia State Trooper Grant Herrnberger, alleging that Herrnberger used excessive force in effectuating the arrest of Pegg, in violation of state and federal law. Herrnberger appeals the district court's denial of his motion for summary judgment based upon that court's holding Herrnberger was not, as a matter of law, entitled to qualified immunity. For the reasons that follow, we reverse the district court's order denying Herrnberger's motion for summary judgment and remand with instructions to enter judgment in favor of Herrnberger.

## I. Factual Background

On August 4, 2013, Herrnberger and another trooper, William Beck, were examining an abandoned vehicle on the side of the road when Brandon Pegg drove by slowly in his truck with the driver's side window open. Herrnberger noticed the truck had an expired inspection sticker and called out to Pegg to stop the vehicle. Pegg did not stop and sped away. The troopers then left in pursuit of Pegg's truck and eventually pulled him over.

Beck approached the driver's side of Pegg's vehicle to speak with Pegg while Herrnberger approached the passenger side to speak with the front passenger, Robert Beever. When

Herrnberger asked to see Beever's identification, Pegg asked why Beever needed to produce identification.

Herrnberger contends that Pegg then reached for something between his legs, a claim Pegg denies. Herrnberger asserts that Pegg's reaching motion appeared suspicious, so he approached the driver's door and ordered Pegg out of his truck. Pegg complied and followed Herrnberger to the rear of Pegg's truck. Herrnberger then instructed Pegg to face the truck, put his hands behind his back, and lock his hands together. Before Pegg turned to face the truck, Herrnberger demonstrated how Pegg should lock his hands together.

Pegg placed his left hand at the small of his back and began to bring his right arm behind his back, but did not interlock his hands as instructed. Herrnberger grabbed Pegg's right arm. Pegg then turned and said "Why is this happening or something along those lines" to Herrnberger and pulled his right arm away from the trooper. J.A. 46. Herrnberger then pushed Pegg against the truck with his left arm, and attempted to pull Pegg's right arm back, which Pegg resisted. Herrnberger then took Pegg to the ground, and both troopers pinned Pegg there and handcuffed him in an event that took less than forty seconds before Pegg was helped to his feet. As a result, Pegg claims he suffered minor scrapes and abrasions on his head, which he

treated with peroxide and Neosporin, but did not seek medical attention.

The troopers arrested Pegg for assaulting a police officer (W. Va. Code § 61-2-10b(e)), obstructing an officer (W. Va. Code § 61-5-17(a)), and driving with an expired inspection sticker (W. Va. Code § 17C-16-9). Pegg was jailed for 8-12 hours before released. A magistrate judge dismissed the assault charge for lack of probable cause, and the prosecuting attorney dismissed the rest of the charges for reasons not apparent on the record.

Pegg then filed a complaint in the U.S. District Court for the Northern District of West Virginia against Herrnberger, individually and in his official capacity pursuant to 42 U.S.C. § 1983. The complaint alleged federal claims of unlawful arrest, retaliatory arrest, and excessive force, and state claims of outrage/intentional infliction of emotional distress and battery. Herrnberger filed a motion for summary judgment, arguing that the suit was barred against him in his official capacity based on sovereign immunity and in his individual capacity because of qualified immunity.

The district court granted Herrnberger's motion for summary judgment in part and denied it in part. All claims against Herrnberger in his official capacity were dismissed as barred by sovereign immunity. Pegg does not challenge the district

4

court's ruling as to the official capacity claims.[1]  The district court denied summary judgment for the claims against Herrnberger in his individual capacity, ruling he was not entitled to qualified immunity.

Herrnberger filed a timely appeal, and we have jurisdiction of the appeal under 28 U.S.C. § 1291. See Am. Civil Liberties Union, Inc. v. Wicomico Cty., 999 F.2d 780, 784 (4th Cir. 1993) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)) (stating questions of law surrounding qualified immunity are appealable as final decisions within the meaning of § 1291).


## II. Analysis

"We review de novo a district court's denial of summary judgment and qualified immunity, construing all facts in the light most favorable to the nonmovant." Orem v. Rephann, 523 F.3d 442, 445 (4th Cir. 2008).  Thus, for purposes of our review here, we construe all facts in the light most favorable to Pegg as non-moving party.  For issues concerning qualified immunity, we have jurisdiction to consider purely legal questions, but not over the district court's "determination that the summary judgment record in this case raised a genuine issue of fact"

---

[1] A fifth claim, for false imprisonment, was dismissed as barred by the statute of limitations and is also not at issue on appeal.

because that is not a final decision for purposes of 28 U.S.C. § 1291.  Johnson v. Jones, 515 U.S. 304, 313 (1995).[2]  Put another way, "we possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's version of the events actually occurred, but we have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them."  Winfield v. Bass, 106 F.3d 525, 530 (4th Cir. 1997).  Consequently, we accept the facts as the district court articulated them when it determined whether summary judgment was appropriate, and then we determine "whether, based on those facts, a reasonable person in the defendant's position could have believed that he or she was acting in conformity with the clearly established law at the time."  Gray-Hopkins v. Prince George's Cty., 309 F.3d 224, 229 (4th Cir. 2002).

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  When evaluating whether a right was clearly established at the time of a violation, courts do not ask "whether the right allegedly violated was established 'as a

---

[2] The opinion omits internal quotation marks, alterations, and citations here and throughout, unless otherwise noted.

6

broad general proposition' but whether 'it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.'" Raub v. Campbell, 785 F.3d 876, 882 (4th Cir. 2015) (quoting Saucier v. Katz, 533 U.S. 194, 201–202 (2001)).

### A.    Qualified Immunity for Unlawful Arrest

The district court determined that Herrnberger's arrest of Pegg was unlawful because it believed Herrnberger did not "principally" arrest Pegg for the expired inspection sticker. Instead, the district court opined the arrest was "for obstructing an officer only after he asked [Herrnberger] a question during the traffic stop."  J.A. 376.

Herrnberger denies that motivation and, in any event, argues that purported subjective reasons for arresting Pegg should not enter into the qualified immunity analysis because Pegg's violation of West Virginia law constituted probable cause for the arrest.  Therefore, with probable cause to arrest, Herrnberger contends he is entitled to qualified immunity.  We agree with Herrnberger.

The Supreme Court has stated unequivocally that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Atwater v. City of Lago Vista, 532 U.S. 318, 354

7

(2001).  In <u>Atwater</u>, the arrestee committed a seat belt violation punishable only by a fine.  Nonetheless, the Supreme Court held that the Fourth Amendment does not forbid a warrantless arrest for such a minor violation.  <u>Id.</u>

Here, Pegg admits that his vehicle had an expired inspection sticker in violation of West Virginia law.[3]  <u>See</u> W. Va. Code § 17C-16-9.  Further, he admits this violation occurred in Herrnberger's presence.  Therefore, just as in <u>Atwater</u>, though Pegg's offense was minor, the Fourth Amendment does not forbid a warrantless arrest for such a violation.

The Supreme Court specifically rejected in <u>Atwater</u> the argument Pegg makes here: that the Fourth Amendment would forbid "custodial arrest, even upon probable cause, when conviction could not ultimately carry any jail time . . . ."  <u>Atwater</u>, 532 U.S. at 346.  Under <u>Atwater</u>, therefore, whether or not a § 17C-16-9 violation is a jailable offense is irrelevant for purposes of the application of qualified immunity.

Pegg attempts to distinguish <u>Atwater</u> by arguing that unlike the Texas seatbelt statute at issue in that case, § 17C-16-9 is not an offense subject to a custodial arrest or punishable by incarceration.  He argues that § 17C-16-9 is not among the list

---

[3] "Request No. 1: Admit that on August 4, 2013, at approximately 11:30 a.m., you were operating a vehicle that had an expired inspection sticker. Response: Admitted."  J.A. 101.

8

of traffic offenses that a separate statute, § 17C-19-3, enumerates as warranting arrest. But that contention -- even if a correct recitation of state law -- is of no consequence under Atwater for Fourth Amendment qualified immunity purposes. Id.

In any event, under West Virginia law, police officers have the authority to effect an arrest for minor traffic violations, including the one at issue here. The language of § 17C-19-3 does not support the reading of the statute that Pegg advances. See § 17C-19-3 (prescribing arrest for traffic violations in "any of the following cases," not in "only the following cases") (emphasis added). Similarly, the statute that controls the procedure for issuing traffic citations, § 17C-19-4, does not prohibit an officer from making an arrest instead of issuing a citation. That these two provisions do not prohibit an officer from making arrests for certain minor offenses is supported by yet another West Virginia statute pertaining to traffic regulations, § 17C-19-5, which provides that "the procedure prescribed [in Chapter 17] shall not otherwise be exclusive of any other method prescribed by law for the arrest and prosecution of a person for an offense of like grade." Such alternative method is described in § 15-2-12(b)(1), which empowers West Virginia State Troopers to make warrantless arrests when witness to "any offense or crime" (emphasis added). As noted earlier, Pegg does not deny that his offense of

9

operating a motor vehicle with an expired inspection sticker occurred in the presence of Herrnberger. As a result, under Atwater and the West Virginia statutes, Herrnberger had probable cause to arrest Pegg for the expired inspection sticker violation.

The district court's determination that Herrnberger arrested Pegg "in practicality" for assault and obstruction of justice, instead of the expired inspection sticker, is also ultimately irrelevant. J.A. 375. The proper focus of the inquiry is not any subjective reason for arresting Pegg, but only the objective facts surrounding the arrest. As the Supreme Court has previously explained, the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004). Instead, the Fourth Amendment requires an analysis under which a police officer's action is not invalidated "'as long as the circumstances, viewed objectively, justify that action.'" Id. (quoting Whren v. United States, 517 U.S. 806, 813 (1996)) (emphasis added). The objective and undisputed fact of Pegg's violation of § 17C-16-9 is fully sufficient, in and of itself, to justify his arrest.[4]

---

[4] Pegg's violation of § 17C-16-9 established probable cause for his arrest and a search incident to that arrest. Accordingly, we need not consider whether Herrnberger's actions (Continued)

10

Thus, Herrnberger did not violate the Fourth Amendment and he is entitled to qualified immunity on this claim as a matter of law. The district court erred in failing to grant summary judgment to Herrnberger on Pegg's claim of unlawful arrest.

    B.    Qualified Immunity for Retaliatory Arrest

The probable cause inherent in Pegg's violation of § 17C-16-9 also defeats his First Amendment retaliatory arrest claim. The Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012). Since the Reichle decision, no such right has been recognized, so the Reichle principle is fully controlling here. Pegg's violation of § 17C-16-9 gave Herrnberger probable cause to arrest Pegg; therefore his arrest was not retaliatory.

Contrary to the district court's conclusion, it is not enough, that Pegg "simply plead 'an absence of probable cause'" for his claim to survive summary judgment. J.A. at 377 (citing Tobey v. Jones, 706 F. 3d 379, 392 (4th Cir. 2013)). The basis for that rule is the assumption that "'probable cause or its

were also permitted under Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Robinson, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under U.S. Const. amend. IV; that intrusion being lawful, a search incident to the arrest requires no additional justification.").

11

absence will be at least an evidentiary issue in practically all cases.'" Tobey v. Jones, 706 F.3d 379, 392 (4th Cir. 2013) (quoting Hartman v. Moore, 547 U.S. 250, 265 (2006)). But in distinction from the appeal in Tobey from the denial of a motion to dismiss, the instant case is a decision on summary judgment. This case is not one where probable cause remains an evidentiary issue; it is undisputed that Pegg violated § 17C-16-9 in the arresting officer's presence, thereby establishing the probable cause for his arrest. Herrnberger is thus entitled to qualified immunity on this claim as well and the district court erred in not granting his motion for summary judgment.

C. Qualified Immunity for Excessive Force

The district court concluded that Herrnberger was not entitled to qualified immunity for Pegg's claim of excessive force on the basis of its finding that Herrnberger was "potentially . . . pre-disposed to using force to arrest [Pegg]." Herrnberger denies any such subjective predisposition, but argues again that any subjective motivations in the mind of the police officer do not factor into the qualified immunity analysis. We again agree with Herrnberger.

An inquiry into any predisposition for force on the part of Herrnberger is an improper mode of analysis for a Fourth Amendment excessive force claim. "Subjective factors involving

12

the officer's motives, intent, or propensities are not relevant." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994).

To determine whether a police officer applied excessive force in violation of the Fourth Amendment, we instead examine officers' actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Specifically, we examine "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. As when examining the lawfulness of an arrest, "[w]hether an officer has used excessive force is analyzed under a standard of objective reasonableness." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011).

Though Pegg's crime was not severe, he admits that he resisted arrest.[5] We conclude Herrnberger applied no more force than necessary to overcome that resistance. Viewing the evidence in the light most favorable to Pegg, after Pegg placed his left hand behind his back he failed to interlock his hands as Herrnberger had just demonstrated to him seconds earlier.

---

[5] "Request No. 6: Admit that you resisted Trooper Herrnberger's attempt to secure your hands behind your back. Response: Admitted." J.A. 101.

13

Pegg then attempted to withdraw his right arm from Herrnberger's grasp. Herrnberger then briskly, but safely, took Pegg to the ground. Pegg remained on the ground for less than a minute and no longer than the time Herrnberger needed to handcuff him. According to Pegg's own statements, Herrnberger did not strike, kick, or verbally abuse him. Instead, Herrnberger performed a simple maneuver to ensure Pegg's compliance. Once Pegg was handcuffed, Herrnberger assisted Pegg back to a standing position and refrained from any further physical contact. As a result of the encounter, Pegg claims abrasions minor enough that he treated them at home with Neosporin and peroxide and did not seek medical assistance. An efficient, lawful arrest of a resisting suspect that causes the suspect to suffer only de minimis injuries does not constitute excessive force. Herrnberger's actions were objectively reasonable and he is entitled to qualified immunity as a result. The district court erred in holding to the contrary.

D. Qualified Immunity for West Virginia State Law Claims

Pegg's complaint also alleged West Virginia state law claims for battery and outrage (intentional infliction of emotional distress) against Herrnberger. Under West Virginia law, a police officer is not entitled to qualified immunity when his or her conduct results in a clearly established constitutional or statutory violation. See Hutchinson v. City

14

of Huntington, 479 S.E.2d 649, 659 (W. Va. 1996). A police officer is also not entitled to qualified immunity under West Virginia law if his or her conduct is "fraudulent, malicious, or otherwise oppressive." Id.

### 1. Battery

Battery under West Virginia law tracks the elements set forth in the Restatement (Second) of Torts: an individual commits battery when "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." W. Va. Fire & Cas. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004) (quoting the Restatement). Moreover, lawful arrests are excluded from the scope of West Virginia battery. A person lawfully performing an arrest is afforded a privilege to engage in arrests within the limit of their jurisdiction, so long as the force is not excessive. Restatement (Second) at § 118; 132.

Relying on its analysis of the claims for unlawful arrest and excessive force, the district court held that a reasonable trier of fact could conclude "the force [Herrnberger] used was unreasonable in the instant case." J.A. 383. As should be evident from our analysis of the foregoing federal claims, Herrnberger did not apply excessive force when arresting Pegg.

15

Accordingly, his contact with Pegg would be privileged for qualified immunity purposes so long as it was not fraudulent, malicious, or otherwise oppressive. Pegg has made no such argument and there is nothing in the record that would allow a conclusion that Herrnberger's alleged actions were malicious or oppressive. Herrnberger remained calm throughout the interaction and applied no more force than necessary to effect a lawful arrest. Moreover, that force was momentary and slight. Herrnberger is thus entitled to qualified immunity on this claim as well. The district court erred in finding otherwise.

2. Outrage, or Intentional Infliction of Emotional Distress

Pegg argued, and the district court agreed, that Herrnberger effected an unlawful arrest with excessive force, which Pegg characterized as a violation of the special trust society bestows upon law enforcement officers egregious enough to support an outrage claim. Herrnberger responded that the arrest was lawful and performed with only the necessary force and therefore cannot form the basis of an outrage claim. Herrnberger is correct.

Under West Virginia law, to establish the tort of outrage, more commonly known as intentional infliction of emotional distress, the plaintiff must establish four elements:

(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;

16

> (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;
>
> (3) that the actions of the defendant caused the plaintiff to suffer emotional distress and;
>
> (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Loudin v. Nat'l Liab. & Fire Ins., 716 S.E.2d 696, 705 (W. Va. 2011).

It is difficult to overstate the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress/outrage. West Virginia courts only find liability for outrage "'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' This is a high standard indeed." Keyes v. Keyes, 392 S.E.2d 693, 696 (W. Va. 1990) (quoting Harless v. First Nat'l Bank, 289 S.E.2d 692, 703–04, n. 20 (W. Va. 1982)).

Viewed objectively and in the light most favorable to Pegg, his outrage claim does not come close to meeting the legal threshold. Herrnberger's conduct does not rise to the level of battery, much less clear the much higher bar required for outrage. A lawful arrest performed without excessive force is, at worst, conduct that is "merely annoying, harmful of one's

17

rights or expectations, uncivil, mean-spirited, or negligent."
Courtney v. Courtney, 413 S.E.2d 418, 423 (W. Va. 1991), rev'd on other grounds, Courtney v. Courtney, 437 S.E.2d 436 (W. Va. 1993)).  Herrnberger's arrest of Pegg was lawful and without excessive force and does not "constitute outrageous conduct." Id.  The facts of this case are markedly milder than the kind of conduct courts applying West Virginia law have found necessary to support an intentional infliction of emotional distress claim.  See, e.g., Heldreth v. Marrs, 425 S.E.2d 157, 161–62 (W. Va. 1992) (allowing an outrage claim to proceed when a husband suffered a heart attack after witnessing his wife get struck by a car and die); Hutchinson v. W. Virginia State Police, 731 F. Supp. 2d 521, 531 (S.D. W. Va. 2010) (finding a legally cognizable claim for outrage for a female suspect who was pulled from the shower by the hair during the execution of a search warrant and forced to lie down naked for at least 45 minutes in the presence of eleven male law enforcement officers, one of whom slapped her behind) aff'd sub nom. Hutchinson v. Lemmon, 436 F. App'x 210 (4th Cir. 2011).  But see Keyes, 392 S.E.2d at 694 (disallowing an outrage claim when a family excluded a son from his father's obituary, burial plans, and the car ride to the funeral); Lee v. City of S. Charleston, 668 F. Supp. 2d 763, 779 (S.D. W. Va. 2009) (disallowing outrage claim based on a roadside public strip search that exposed arrestee's genitals to

18

the arresting officer); <u>Lowe v. Spears</u>, 2009 WL 1393860, at * 6 (S.D. W. Va. May 15, 2009) (disallowing outrage claim when an officer arrested an individual for a minor offense, possibly in response to arrestee's use of profanity toward the officer).

Herrnberger is entitled to qualified immunity on this claim and the district court erred in concluding otherwise.


## III. Conclusion

For the foregoing reasons, we reverse the district court's order denying Herrnberger's motion for summary judgment. He was entitled to qualified immunity for all claims as a matter of law. The case is therefore remanded to the district court for the entry of judgment in favor of Herrnberger on all claims.

<u>REVERSED AND REMANDED</u><br>
<u>WITH INSTRUCTIONS</u>