**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-1650**

_____

JULIE ANN HAMSTEAD,

　　　　Plaintiff – Appellant,

v.

TROOPER D. R. WALKER, individually,

　　　　Defendant – Appellee,

and

WEST VIRGINIA STATE POLICE; THE CITY OF RANSON, WEST VIRGINIA; SARGEANT KEITH SIGULINSKY, in his official capacity; CITY OF CHARLES TOWN, West Virginia; MASTER PATROLMAN JASON NEWLIN, in his official capacity; THE WEST VIRGINIA DIVISION OF HIGHWAYS; RODNEY D. HEDRICK, SR., in his official capacity; AB, an unknown individual known as the West Virginia Department of Highways "Muscle Man" on the 2016 Ranson-Charles Town Green Corridor Fairfax Boulevard Project; JEFFERSON CONTRACTING, INC., a corporation; JEFFERSON ASPHALT PRODUCTS COMPANY, a corporation; DALE DEGRAVE; ALLEN SHUTTS; JOHN TIMOTHY MORRIS; KELLY HALBERT, RN; THE CHARLES TOWN GENERAL HOSPITAL, d/b/a Jefferson Medical Center; KYLE REED KOPPENHAVER, in his official capacity,

　　　　Defendants.

_____

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. John Preston Bailey, District Judge. (3:18-cv-00079-JPB)

_____

Submitted: August 31, 2022　　　　　　　　　　　Decided: October 5, 2022

_____

Before AGEE, RICHARDSON, and RUSHING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:** Braun A. Hamstead, HAMSTEAD & ASSOCIATES, L.C., Charles Town, West Virginia, for Appellant. Montè L. Williams, Morgantown, West Virginia, Mark G. Jeffries, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

Plaintiff Julie Hamstead sued West Virginia State Trooper D.R. Walker, raising various claims under 42 U.S.C. § 1983 and West Virginia common law. Many of her claims were dismissed at the pleading stage, but three proceeded to discovery, after which the district court granted summary judgment to Trooper Walker. Hamstead challenges that summary judgment ruling and the dismissal of five of her claims at the Rule 12(b)(6) stage. For the reasons that follow, we affirm.

## I.

## A.

As Hamstead's appeal concerns both claims dismissed at the Rule 12(b)(6) stage and at summary judgment, we begin by reciting the allegations in her Second Amended Complaint, accepting them all as true and reading them in the light most favorable to her. *See Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364–65 (4th Cir. 2012).

Hamstead owned various commercial real estate properties in Charles Town, West Virginia. On April 25, 2018, she observed that workers with Jefferson Asphalt were beginning work on a project that she opposed near her properties. She drove to a nearby parking lot at the American Public University ("APU") where several workers were congregated so she could ask them questions about the project. Shortly after arriving, Hamstead's vehicle and a Jefferson Asphalt work truck collided. The police were called, and Trooper Walker was one of three officers who responded.

3

From this point forward, Hamstead alleged that all of the construction workers conspired with the police to blame the accident on her and fabricate evidence to support that assignment of fault. As construction workers told police that Hamstead caused the accident, she began protesting those allegations to Trooper Walker, but he told her that he did not care and ordered her to "shut up" multiple times. J.A. 134–35. "In order to better hear what was being said and to exercise her right to defend herself against false charges by the conspiring defendants," Hamstead "turned toward the group" of workers standing with the other two police officers. J.A. 135. At that point, she alleged Trooper Walker arrested her and used excessive force in doing so. Trooper Walker allegedly grabbed her arm, twisted it behind her, and picked her up by it; "smashed" her face against a nearby work truck; and then "slammed" her face down into the ground. J.A. 135–36. Trooper Walker then placed her in the back seat of his cruiser, where Hamstead alleged that he "turned up the already blaring hard rock music that was playing with the windows closed." J.A. 136.

After she was arrested, Hamstead alleged that officers and the group of construction workers then conspired to have a red dump truck parked next to Trooper Walker's cruiser. She alleged this arrangement allowed them to fabricate evidence to make it look like she caused the prior accident, when in fact it was a Jefferson Asphalt worker who hit her car. She asserted that all her allegations were corroborated by APU surveillance footage.

Shortly after her arrest, Trooper Walker took Hamstead to the hospital for a precautionary evaluation. During the ride, he did not fasten Hamstead's seat belt and

4

allegedly subjected her to a "rough ride" by driving at reckless speeds. J.A. 144. He also "chided [her] with words to the effect of 'don't show your ass' at the hospital." J.A. 141.

After Hamstead was discharged from the hospital, Trooper Walker took her to the nearby State Police Barracks and made her sit on a cold metal chair while he sat at his desk singing "sex songs," eating food, and making "strange noises behind his desk[] until he decided it was time to 'call the Magistrate.'" J.A. 144. During the drive to the Magistrate Court, he again did not fasten her seat belt and subjected her to a "rough ride" by driving at reckless speeds. *Id.* He also allegedly touched her knee in a sexually harassing manner.

Once before the Magistrate, Trooper Walker presented a Criminal Complaint charging Hamstead with three misdemeanors under West Virginia law: disorderly conduct, obstructing an officer, and destruction of property. The Magistrate found probable cause for each charge, but released Hamstead on her personal recognizance. At a later bench trial, the Magistrate found her guilty of disorderly conduct and obstruction, but acquitted her of the destruction of property charge.

Hamstead appealed her convictions to the Circuit Court for Jefferson County, West Virginia. Before trial, however, Hamstead accepted the State's offer to plead nolo contendere to the disorderly conduct charge in exchange for dismissing the obstruction charge. The circuit court judge accepted her plea, convicted her of the disorderly conduct offense, and imposed a fine and court costs as punishment.

B.

Hamstead at first sued Trooper Walker and a host of other individuals, corporate entities, and governmental entities in West Virginia state court. Her First Amended

Complaint asserted these state law claims: malicious prosecution; abuse of process; battery; negligence; the tort of outrage (commonly known as intentional infliction of emotional distress); respondeat superior, negligent hiring, training, and supervision; and "Obstruction of Justice." She also asserted myriad § 1983 claims against Trooper Walker, but only in his official capacity. Several defendants, with the consent of all others, removed the suit to federal court, invoking the court's federal question jurisdiction.

Upon Trooper Walker's motion, the district court dismissed the First Amended Complaint with prejudice for failure to state a claim. So Hamstead moved to reopen the case and for leave to amend. The district court granted the motion in part, permitting her to refile the abuse of process, outrage, and all § 1983 claims so long as they were brought against Trooper Walker in his individual capacity. The court denied leave to amend for all other claims either because "they were not recognized causes of action or it was [already] determined Trooper Walker was entitled to qualified immunity." J.A. 119.

Trooper Walker then moved to dismiss Hamstead's Second Amended Complaint, which the district court granted in part. Relevant here, it dismissed the abuse of process claim and several § 1983 claims, but it permitted three claims to proceed to discovery: (1) an excessive use of force claim under § 1983; (2) an unlawful search and seizure claim under § 1983; and (3) the state law outrage claim.

After discovery, Trooper Walker moved for summary judgment as to all three claims and Hamstead cross-moved for summary judgment only as to the unlawful search and seizure claim. In a thorough and well-reasoned opinion, the district court granted

6

summary judgment to Trooper Walker *in toto*, finding that Hamstead largely produced no admissible evidence that could create a genuine issue of material fact for trial.

Hamstead timely noted an appeal. We have jurisdiction under 28 U.S.C. § 1291.

II.

We begin with Hamstead's appeal of those claims dismissed at the pleading stage: her state law malicious prosecution and abuse of process claims; and her § 1983 claims of retaliatory arrest and deprivations of her due process rights under the Fourteenth Amendment. We review the district court's dismissal orders de novo. *Wag More Dogs, LLC*, 680 F.3d at 364. At the Rule 12(b)(6) stage, Hamstead needed to allege sufficient facts to "nudge [her] claims across the line from conceivable to plausible." *Id.* at 365 (cleaned up). As explained below, Hamstead failed to do so for each challenged claim.

A.

Two of the claims dismissed at the pleading stage—Hamstead's state law malicious prosecution claim and her retaliatory arrest claim brought under § 1983—required her to allege that Trooper Walker arrested her without probable cause. *See Reichle v. Howards*, 566 U.S. 658, 664–65 (2012) (explaining that a police officer is entitled to qualified immunity from a retaliatory arrest claim brought under § 1983 because the Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause"); Syl. Pt. 1, *Goodwin v. City of Shepherdstown*, 825 S.E.2d 363, 364 (W. Va. 2019) (listing as an element of a malicious prosecution claim that the prosecution be initiated "without probable cause"). We agree with the district court that

7

Hamstead's conviction of disorderly conduct arising from her nolo contendere plea precluded her from relitigating whether probable cause existed to arrest her for that offense, though for slightly different reasons. *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005) ("We are not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record.").

The district court correctly found that it could take judicial notice of the fact that Hamstead was convicted of disorderly conduct, and that Federal Rule of Evidence 410 would permit that fact to be admitted into evidence at trial. *See, e.g.*, *Olsen v. Correiro*, 189 F.3d 52, 62 (1st Cir. 1999). While the district court further found that Rule 410 would allow a factfinder to infer from that conviction that Trooper Walker had probable cause to arrest her, we need not go so far. Rather, under West Virginia law, the criminal judgment against Hamstead precludes her from relitigating probable cause, and federal statutory law requires us to give her criminal judgment that same issue-preclusive effect in this case.

Pursuant to 28 U.S.C. § 1738, federal courts must afford the same issue or claim-preclusive effect to a state court judgment that a state court would afford. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380–81 (1985); *see* 28 U.S.C. § 1738. In doing so, we first "must look to state law to determine the preclusive effect of the state court judgment." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 128 (4th Cir. 2000). Second, if the state would afford issue- or claim-preclusive effect to the judgment, we "must determine if Congress created an exception to § 1738." *Id.*

Applying that analytical framework, first, the West Virginia Supreme Court of Appeals' case law establishes that a conviction arising from a nolo contendere plea

8

precludes a civil rights plaintiff from arguing her arrest was not supported by probable cause. That court has held that all convictions—"whether as a result of a plea of guilty[ or] *nolo contendere*, or . . . [after a trial]"—"stand on the same footing." *West Virginia v. Evans*, 508 S.E.2d 606, 610 (W. Va. 1998) (citation omitted). The court elaborated on the issue-preclusive effect of such a judgment in clear terms: "A judgment of conviction . . . is *conclusive evidence of probable cause* for believing the accused guilty of the offense charged to him, unless the conviction was procured by fraud[.]" *Jarvis v. W. Va. State Police*, 711 S.E.2d 542, 551 (W. Va. 2010) (emphasis added) (citation omitted). Thus, a West Virginia court would have precluded Hamstead from relitigating probable cause had this suit remained in state court.[1] *Cf. Hamstead v. Harvey*, No. 21-0410, 2022 WL 856610, at *6 (W. Va. Mar. 23, 2022) (holding that Hamstead was precluded from relitigating probable cause in a civil suit arising out of the April 25 incident). And Congress has not directed an exception to § 1738's command when adjudicating claims brought under 42 U.S.C. § 1983, *see Allen v. McCurry*, 449 U.S. 90, 96–98 (1980), or state law, *see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982). Thus, Hamstead is precluded from relitigating probable cause as to the disorderly conduct offense. We therefore affirm the

---

[1] Hamstead has not alleged that her "conviction was procured by fraud." Jarvis, 711 S.E.2d at 551. She claimed her arrest was procured through the fabrication of evidence, but she never alleged that her conviction—which arose from her decision to plead nolo contendere—was procured by fraud. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1320 (11th Cir. 2017) (holding that a civil plaintiff who pleaded nolo contendere to and was convicted of an offense was precluded from relitigating probable cause under Florida law, which mirrors West Virginia law, because he did not allege that "he was coerced into pleading nolo contendere by any means").

9

dismissal of her § 1983 retaliatory arrest claim, and of the state law malicious prosecution claim to the extent it was premised upon that offense.[2]

In cases in which an individual was arrested for multiple violations of state law, some courts hold that an officer's probable cause to arrest the individual for one offense does not preclude a subsequent malicious prosecution claim as to the other offenses of arrest. *See, e.g.*, *Williams v. Aguirre*, 965 F.3d 1147, 1160–62 (11th Cir. 2020). We need not decide if that is an accurate statement of West Virginia law because, even if it were, we conclude for the reasons stated by the district court that Hamstead's First Amended Complaint failed to plausibly allege all of the required elements for a malicious prosecution claim. J.A. 99–100; *see* Syl. Pt. 1, *Goodwin*, 825 S.E.2d at 368 (listing all of the elements). We therefore affirm the district court's dismissal of this count in its entirety.

B.

Next, Hamstead challenges the dismissal of her claim that Trooper Walker's failure to preserve the bodycam and dashcam footage from April 25 constituted a violation of her due process rights under the Fourteenth Amendment. For the spoliation of evidence to constitute a due process violation, Hamstead was required to first allege that the bodycam and dashcam footage was "material," in that it possessed "exculpatory value that was apparent before [it] was destroyed, and [was] of such a nature that [she was] unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*,

---

[2] While the district court did not rely upon Hamstead's conviction to dismiss her malicious prosecution claim from her First Amended Complaint, again, we "may affirm on any grounds apparent from the record." *Smith*, 395 F.3d at 519.

467 U.S. 479, 489 (1984). We agree with the district court that Hamstead failed to allege

materiality because she could have obtained comparable evidence by other readily

available means. That is, she could have called the construction workers, Trooper Walker,

and the other police officers present at the scene to testify at trial and cross-examine them

about the events that Trooper Walker's bodycam and dashcam may have recorded. *See*

*United States v. Parker*, 72 F.3d 1444, 1452 (10th Cir. 1995); *United States v. Matthews*,

373 F. App'x 386, 390–91 (4th Cir. 2010). Thus, this claim was properly dismissed.[3]

## C.

Finally, Hamstead brought an abuse of process claim under West Virginia law,

which "[g]enerally . . . consists of the willful or malicious misuse or misapplication of

lawfully issued process to accomplish some purpose not intended or warranted by that

process." Syl. Pt. 2, *Wayne Cty. Bank v. Hodges*, 338 S.E.2d 202, 202–03 (W. Va. 1985)

(citations omitted). She claimed that Trooper Walker abused the legal process by filing the

charges against her based upon false evidence and with the intent to cover up his excessive

use of force in arresting her. We affirm the dismissal of this claim because Hamstead did

not allege "that Trooper Walker used the judicial process for an improper purpose *after* he

filed the criminal complaint against her." J.A. 203; *see Preiser v. MacQueen*, 352 S.E.2d

22, 28 n.8 (W. Va. 1985) (explaining that a defendant cannot be held liable for abuse of

---

[3] Hamstead also challenged the dismissal of a second due process claim, which alleged Trooper Walker fabricated evidence as a post-hoc justification for her arrest. But she waived appellate review of this claim by providing no developed legal argument in her Opening Brief to support it. *See, e.g.*, *Grayson O. Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by . . . failing to develop its argument––even if its [opening] brief takes a passing shot at the issue." (cleaned up)).

process if he "has done nothing more than carry out the process to its authorized conclusion, *even though with bad intentions*" (emphasis added) (citations omitted)).

III.

As noted earlier, three of Hamstead's claims proceeded to discovery: (1) excessive use of force under § 1983; (2) unlawful search and seizure under § 1983; and (3) the tort of outrage under West Virginia common law. Having reviewed the district court's summary judgment order de novo in accordance with the framework of review that Federal Rule of Civil Procedure 56 demands, *see Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015) (detailing that framework), we agree with the district court that Trooper Walker was entitled to summary judgment as to each claim.

A.

Hamstead's excessive use of force claim relied largely on her accusations that Trooper Walker "smashed the right side of her face into [the] work truck" and then "slammed [her] face down into the ground." J.A. 135–36. But Hamstead "present[ed] no evidence to support her allegation[s]," J.A. 1019, "not even . . . her *own* sworn testimony," J.A. 1022. A nonmoving party cannot rely upon accusation alone to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1), (e); *see also Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018) ("[The nonmoving] party must produce evidence that goes beyond conclusory or speculative allegations and relies on more than a mere scintilla evidence to withstand summary judgment." (cleaned up)).

12

The undisputed record evidence showed that throughout the incident, Hamstead was "irate" and "yelling and screaming profanity." J.A. 272, 280. Trooper Walker told her several times she could not intervene in the other officers' interviews of the construction workers present on the scene, and he admitted to having told her to "shut up." But Hamstead continued in her efforts to intervene. When Trooper Walker again tried to stop her from doing so, and told her she needed to "shut [her] mouth," Hamstead responded, "Arrest me, go ahead, just arrest me." J.A. 277, 289–90. So he did, believing he had probable cause to do so for disorderly conduct and obstruction. But Hamstead resisted his efforts at every turn, "swatt[ing]" away Trooper Walker's hands and "kicking and hollering and screaming" while trying to "pull[] away from him." J.A. 278, 281. To aid his efforts, the undisputed evidence showed that Trooper Walker "put her up against the truck" for leverage, and when that failed, he "put her on the ground," which was ultimately successful. J.A. 290.[4]

Having reviewed the *Graham* factors, we agree with the district court that Trooper Walker's use of efficient means to bring about Hamstead's arrest—even though she

---

[4] For the first time on appeal, Hamstead points to an affidavit she prepared for her state criminal trial in 2017 that contains some assertions arguably contradicting the above-outlined facts. *See* J.A. 938–49. Hamstead did not provide that affidavit to the district court even though it existed long before she filed her opposition to Trooper Walker's summary judgment motion. She therefore cannot now rely on that affidavit to demonstrate the presence of a genuine issue of material fact. "Under Federal Rule of Civil Procedure 56(e), if [Hamstead] wanted certain evidence considered in opposition of [Trooper Walker's] summary judgment motion, [she] was required to point it out to the district court." *Brown v. Flowers*, 196 F. App'x 178, 182 (4th Cir. 2006); *accord, e.g.*, *Whitlock v. Duke Univ.*, 829 F.2d 1340, 1343 (4th Cir. 1987) (rejecting the plaintiff's request to consider for the first time on appeal evidence that he had access to, but did not submit to the district court, when opposing the defendants' motion for summary judgment).

13

incurred minor injuries as a result—was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 395–97 (1989) (explaining that an officer is entitled to qualified immunity from an excessive use of force claim under § 1983 if his use of force was objectively reasonable, and setting forth the factors guiding that reasonableness analysis); *Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017) ("An efficient, lawful arrest of a resisting suspect that causes the suspect to suffer only de minimis injuries does not constitute excessive force."). He is therefore entitled to qualified immunity from this claim and, in turn, summary judgment.

B.

Hamstead's unlawful search and seizure claim arising under § 1983 concerned Trooper Walker's seizure of her driver's license. According to her allegations, he either seized the license himself or ordered one of the construction workers at the site to seize it from her car without probable cause. During discovery, Trooper Walker acknowledged that at one point he had Hamstead's license, but he could not recall how he came into possession of it. He added that the last time he saw Hamstead's license was on his desk, but he again could not explain its disappearance. No other witness from the April 25 incident, including Hamstead, could explain how Trooper Walker came into possession of her license or how the license was lost.

The only evidence Hamstead presented was an affidavit she wrote that purported to explain how Trooper Walker obtained her license, how he lost it, and his motivations for losing it. As the district court correctly found, those statements were inadmissible as lay witness opinions because they were neither founded upon her personal observations nor

14

grounded in any record evidence. J.A. 1026–32; *see United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006) ("[S]peculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible.").

All told, then, there is no record evidence that would permit a reasonable juror to conclude that Trooper Walker either (a) directed or condoned an allegedly unlawful search of Hamstead's purse for her license, *see Presley v. City of Charlottesville*, 464 F.3d 480, 487 (4th Cir. 2006); or (b) intentionally deprived Hamstead of some cognizable property interest in her license, *see Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995) ("[N]egligent deprivations of . . . property are not actionable under [§ 1983]."). We therefore affirm the district court's holding that Trooper Walker was entitled to qualified immunity from this claim and its ultimate award of summary judgment to him.

C.

Finally, Hamstead argued that the totality of Trooper Walker's conduct on April 25 was outrageous and caused her severe emotional harm. Under West Virginia law, the tort of outrage requires, among other things, proof that the defendant's conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." *Loudin v. Nat'l Liab. & Fire Ins.*, 716 S.E.2d 696, 705 (W. Va. 2011) (citations omitted). The conduct at issue must be both objectively and subjectively outrageous. *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 404 (W. Va. 2008). Whether a defendant's conduct is objectively outrageous is a question of law for the court to decide. *Id.*

We agree with the district court that, even when reading the evidence in the light most favorable to Hamstead, Trooper Walker's conduct on April 25 was not objectively

15

outrageous. The only allegations that Hamstead substantiated at the summary judgment stage were that Trooper Walker told her to shut up and to not "act like an ass" at the hospital, J.A. 296; drove her in his cruiser without buckling her seat belt; made her listen to rock and country music with sometimes suggestive lyrics; and ate food at his desk while she sat in front of him in a cold metal chair in the barracks.[5] This conduct was, at most, "annoying, harmful of [Hamstead's] . . . expectations, uncivil, mean-spirited, or negligent," but that does not an outrage claim make. *Courtney v. Courtney*, 413 S.E.2d 418, 423 (W. Va. 1991); *see Pegg*, 845 F.3d at 122 (collecting West Virginia cases showing the type of conduct that supports an outrage claim).

## IV.

For these reasons, the judgment of the district court is

*AFFIRMED.*

---

[5] As the district court explained, no reasonable jury could believe Hamstead's claim that the police officers and construction workers "conspired" to fabricate evidence and procure false charges against her. J.A. 1044–47; *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining that summary judgment is appropriate when one party's story "is blatantly contradicted by the record[] so that no reasonable jury could believe it").

16